[Civ. No. 16268.   First Dist., Div. One.   Apr. 15, 1955.]

VICTOR MULA, Appellant, v. OSCAR W. MEYER,
Respondent.

M. Henry Robidoux and Arvin O. Robb for Appellant.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Respondent.

PETERS, P. J.—Plaintiff, Victor Mula, an employee of a subcontractor, appeals from an adverse judgment rendered in an action brought by him against defendant Oscar W. Meyer, the general contractor, for damages for personal injuries plaintiff received while working on the job, it being claimed that such injuries were proximately caused by the failure of defendant to install a safety device required by law.

The defendant, on October 2, 1950, as general contractor, was engaged in the construction of a house. Plaintiff was working on that house as an employee of the heating contractor. On the date of the accident the rough flooring in

the living room and den of the house had been installed. In a corner of the living room and extending into the den was a triangularly-shaped hole approximately 6½' x 5' x 5', intended for the fireplace structure which had not yet been installed. Plaintiff, on the morning in question, was instructed by his foreman to install the required heating registers. A register is first covered with paper and then nailed into place in the hole that has been prepared for it by the carpenters. Plaintiff testified that he prepared a register to be installed in the north wall of the living room, and to do so had to clear away a lot of debris that covered the living room floor. The testimony of defendant's witnesses was that the living room floor had been swept before plaintiff arrived, and was clean. When plaintiff arrived on the job, and while preparing the register for installation, he apparently saw the fireplace opening. His precise testimony is that "I might have noticed it going in . . . I might have saw it . . . I guess I saw the opening." (R.T. 21.) He also testified that the opening was not then covered and had no railing around it, "it was just an open hole." (R.T. 21.) Plaintiff's foreman, who had brought plaintiff to the job, was not present when the accident occurred, but returned to the house several hours later. He testified that at that time there was no railing around the fireplace hole. On the other hand, the foreman for defendant testified that until the morning of the accident the hole had been covered with planks, and also had a 2" x 4" railing around it, but that the very morning of the accident before plaintiff started work the planks had been removed for the convenience of the masons who were to construct the chimney and fireplaces. He also testified that the hole was to accommodate a double fireplace, one in the living room and one in the den, with a single brick chimney containing separate flues for each fireplace. This witness was positive that the railing was in place at the time of and after the accident.

Plaintiff testified that, after preparing the register, he found a saw horse in the room, placed it parallel to the wall near the open hole, and stood on the saw horse while nailing the register to the studs where it was supposed to be installed. He stated that after completing this operation, he "stepped off of the saw horse and made a couple of turns around to sight the south wall" (R.T. 24) because he was under the impression that there might be another register required in

the living room. He turned a full circle, took another step to the right, and fell into the fireplace hole. He suffered serious injuries.

The foreman for defendant testified that immediately after the accident he rushed over to the fireplace hole; that he saw plaintiff lying in the basement; that the railing around the hole was still intact; and that the saw horse was turned upside down over that portion of the hole that was in the den.

As part of his case plaintiff introduced into evidence sections 1571 and 1561 of the Construction Safety Orders of the Division of Industrial Safety. Section 1571 requires that any hole cut in a floor shall be covered with planks or fenced on all sides with a railing. Section 1561 prescribes the specifications of the lumber that must be used for such railings.

The jury was instructed on theories of negligence, on the doctrine of negligence *per se* as it applied to defendant, and on contributory negligence. It brought in a verdict for defendant. Plaintiff appeals from the judgment entered on that verdict.

The major contention of appellant seems to be that, under the facts and the law, his contributory negligence, if any, was not a defense to the action, and that it was error of a most prejudicial nature to have instructed on the doctrine at all. It is argued that, as a matter of public policy, the provisions of the Industrial Safety Act were passed for the benefit of all workmen on the job, and that the beneficent purposes of these provisions cannot be defeated by the defense that the worker for whose benefit they were passed was contributively negligent. There are some decisions that hold that contributory negligence is not a defense in actions based upon violation of a statute enacted for the protection of a particular class of persons who are incapable of protecting themselves. (See cases collected in annotation, 171 A.L.R. 894, 895.) This is the view of the Restatement of Torts. Section 483 provides that: "If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute."

This rule is generally applied in interpreting statutes passed for the protection of children, insane persons, or

patrons of bars, etc. But even as to the limited class included within this exception to the general rule, the overwhelming weight of authority is that contributory negligence is a defense. In the annotation referred to above, at page 897, many cases are cited to support the statement that: "Generally speaking, however, the great majority of the courts have taken the broader view that unless expressly precluded by statute, the contributory negligence of the plaintiff is as good a defense to an action based on the violation of a statute as to an action for common-law negligence . . . This conclusion has been reached even in cases where the violation of the statute was regarded as negligence *per se*."

Appellant argues, however, that California by statute has adopted the rule of the Restatement in reference to the violation of safety measures passed for the protection of employees. He refers to section 2801 of the Labor Code, which provides:

"2801. In any action to recover damages for a personal injury sustained within this State by an employee while engaged in the line of his duty or the course of his employment as such, or for death resulting from personal injury so sustained, in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer, . . . the fact that such employee has been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee.

"It shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any law enacted for the safety of employees contributed to such employee's injury. . . ."

This section was first enacted in 1911 as part of the so-called Roseberry Act. (Stats. 1911, chap. 399, §§ 1 and 2, p. 796.) When the Workmen's Compensation Acts were adopted in 1913 and 1917 this provision of the Roseberry Act was preserved to govern those few situations in which the employee may still sue his employer. But the section, by express language, applies only to the employer-employee relationship, and has no application to an action such as the instant one by an invitee against the invitor. As to that relationship, the defense of contributory negligence exists

even though defendant's liability is predicated upon violation of a safety order. (*Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32]; *Dunn* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 265 [272 P.2d 745].)

Appellant argues that a violation of a safety order constitutes negligence *per se*, and then apparently argues that in such a case liability is absolute. Appellant has misconceived the legal effect of a violation of a safety order or statute. ▓▓ It is undoubtedly true that the safety orders here involved were enacted for the protection of the class of which appellant is a member. This being so, a violation of the safety orders constituted negligence *per se*. (*Clinkscales* v. *Carver*, 22 Cal.2d 72 [136 P.2d 777].) In other words, in such a case the jury must be instructed that if a violation is found the jury must find the defendant guilty of negligence as a matter of law. Here the jury was so instructed. But because the defendant was negligent as a matter of law does not determine that he is absolutely liable. He may have any one of several defenses. He may be able to prove that, although he was negligent, plaintiff too acted negligently so as to contribute concurrently and proximately to the accident. (See *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511 [50 P.2d 801].) The argument that, because respondent was guilty of negligence *per se*, the defense of contributory negligence has been eliminated, simply confuses negligence as a matter of law with the doctrine of absolute liability. The California cases cited by appellant merely hold that in cases of violation of a safety regulation the defendant cannot defend on the ground that the plaintiff for whose protection the regulation was passed assumed the risk. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17]; *Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32].) But both cases properly recognized that the issue of contributory negligence was one of fact for the judge or jury.

The appellant also seeks to deprive the respondent of the defense of contributory negligence by the argument that, under the facts, as a matter of law, his own negligence was not and could not be a proximate cause of the accident. The argument seems to be that respondent was in control of the premises and of their condition of safety; that the safety orders imposed a standard of care; that if that standard of care was violated, such violation, as a matter of law, was the proximate cause. It is argued that it was foreseeable that some workman might fall through the opening; that re-

spondent was in the better position to prevent the occurrence; and that in such circumstances respondent should be liable. This is simply another way of arguing that defendant is absolutely liable.

■ Appellant misconceives the purpose and effect of the safety orders. They establish a standard of conduct to measure the negligence of the defendant and upon which the injured party may rely. (*Edwards* v. *Hollywood Canteen* 27 Cal.2d 802 [167 P.2d 729]; *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Polk* v. *City of Los Angeles*, 26 Cal.2d 519 [159 P.2d 931].) But when the safety order is violated and one of the protected class is injured and sues, his action is not a statutory one arising out of the violation of the safety orders, but is a common-law action for tort, in which the defendant's standard of conduct is fixed by the statute. In such a situation all of the California cases hold that contributory negligence may be a defense.

It should also be mentioned that this concept that the action is statutory in nature has been first advanced in the appellate court. Throughout the pleadings and trial the action was treated as one for a common-law tort. No instruction was offered by appellant that the action was statutory and liability absolute, but in fact the appellant offered, and the court gave, instructions to the effect that the safety orders established a standard of care of defendant and constituted negligence *per se*.

■ The next argument of appellant is that, while the instructions on negligence and contributory negligence were correct as far as they went, it was error to not qualify the definition of contributory negligence to relate to the circumstances of this case. Instead, the jury, after having been given proper instructions on contributory negligence and proximate cause, was told that "One who is in a place where he is exposed to danger must exercise his faculties for his own protection, and if he approaches a place which he knows is one of danger, he must take reasonable precautions to avoid being injured." It is contended that the amount of care that a workingman must exercise is affected by the attention given by him to his work, and that the jury should have been instructed that in determining the degree of care to be exercised by the workingman, this factor should be considered. In other words, appellant contends that he was entitled to a qualifying instruction to the effect that in the

present case the appellant's duty of care by virtue of his attention to his work and by virtue of the statute was less than that of respondent who was in charge of the premises and violated the safety order.

Undoubtedly there are several cases holding that "where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case." (*Ostertag* v. *Bethlehem etc. Corp.*, 65 Cal.App.2d 795, 801 [151 P.2d 647], and cases cited therein.) There is also sound authority to the effect that momentary forgetfulness of a known danger does not necessarily constitute contributory negligence as a matter of law. (*Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32], and cases there cited.) It may be assumed that under the rules announced in these cases, appellant would have been entitled to a quaifying instruction had such instruction been requested. But appellant offered no such qualifying instruction. He is, therefore, precluded from raising, for the first time on appeal, the failure to give such an instruction. As was said in *Maus* v. *Scavenger Protective Assn.*, 2 Cal.App. 2d 624, 629 [39 P.2d 209] : ". . . the instruction was correct so far as it went; and if it failed to state a proper qualification or limitation it was the defendant's duty to request a more specific instruction." In *Ornales* v. *Wigger*, 35 Cal.2d 474, 478 [218 P.2d 531], the rule was stated as follows: "Ordinarily, before an appellant may complain of the lack of an instruction, he must have made a request that the charge be made more specific, or ask for qualifying instructions." The same rule was stated in *Baldridge* v. *Cunningham*, 31 Cal.App.2d 128, 132 [87 P.2d 369], in the following language : "If defendant Cunningham desired a further elaboration upon the instruction relative to the *quantum* of evidence necessary to establish justification or excuse, and thereby rebut the presumption of negligence arising from a violation of the California Vehicle Code, it was her duty to propose the further instruction which she desired and request the court to give it. This she did not do." (See also *Kuehn* v. *Lowthian*, 124 Cal.App.2d 867 [269 P.2d 666] ; *O'Connor* v. *United Railroads*, 168 Cal. 43 [141 P. 809] ; *Western States Gas & Elec. Co.* v. *Bayside Lbr. Co.*, 182 Cal. 140 [187 P. 735].) The failure to offer the qualifying instruction precludes the point being made for the first time on appeal.

The last major contention of appellant is that the instructions on violation of the safety orders, assumption of risk and contributory negligence were conflicting and misled the jury. There is no merit to the point.

The court instructed that the respondent had to use reasonable care to keep the premises in a reasonably safe condition for the use of employees of subcontractors, but that the respondent was not an insurer of the appellant's safety nor liable for injury resulting from an obvious danger or one that could have been observed had appellant exercised ordinary care; that certain orders of the Division of Industrial Safety were designed to protect human life; that the courts in recognition of the underlying public policy and the inability of employees to protect themselves do not permit an employee of a subcontractor to assume the risk of injury by waiving the duty imposed upon the respondent by the order, even though the employee of the subcontractor had express knowledge of it; and that orders of the Division of Industrial Safety established a minimum standard of safety. The safety regulations here involved were read to the jury and it was told that if it found that respondent did not comply with the provisions of these orders, he was negligent *per se.*

It is appellant's thought that the instruction that respondent could not be held liable "for injury to the employees of subcontractors resulting from a danger which was obvious or should have been observed in the exercise of reasonable care," conflicts with the instruction that appellant did not assume the risk.

The "obvious danger" instruction was a correct one. Appellant was admittedly an invitee. Admittedly he knew of the opening in the floor and that it was unfenced. ■ To the extent that the duty of self-protection rests upon an invitee, the duty of the invitor is reduced. ■ There are many cases holding that an invitee cannot recover for injuries caused by an obvious defect.. (*Shanley* v. *American Olive Co.,* 185 Cal. 552 [197 P. 793]; *Brown* v. *San Francisco Ball Club, Inc.,* 99 Cal.App.2d 484 [222 P.2d 19]; *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511 [50 P.2d 801]; *Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529 [157 P.2d 57].)

■ The law recognizes that the defenses of assumption of risk and contributory negligence are separate and distinct. Here the trial court properly ruled out the doctrine of assumption of risk, but permitted the jury to consider the defense

of contributory negligence. This is in accord with the law applicable to the invitor-invitee relationship.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.