[Civ. No. 4181.   Fourth Dist.   Nov. 6, 1951.]

LERON D. PIERSON, Respondent, v. HOLLY SUGAR
CORPORATION (a Corporation), Appellant.

Friis & Schutz, Leo J. Friis and Warren L. Schutz for Appellant.

Clarence E. Sprague and James D. Garibaldi for Respondent.

MUSSELL, J.—Defendant Holly Sugar Corporation appeals from a judgment entered pursuant to a jury verdict in favor of plaintiff in an action brought to recover damages for injuries which he sustained when a freight elevator on which he was riding dropped from the third to the ground floor in defendant's Santa Ana sugar plant building. There is no dispute as to the nature and extent of plaintiff's injuries.

Appellant asserts as grounds for reversal of the judgment that the trial court erred in permitting the introduction of certain testimony and in the giving of instructions.

The circumstances under which plaintiff's injuries were received are as follows: On May 28, 1949, the day of the accident, plaintiff, who was employed as a road salesman by Bowie Pie Company, entered defendant's building, carrying an order of 10 pies for delivery to a cafeteria situated and operated on the third floor. In order to deliver his merchandise, it was necessary that plaintiff climb stairs to the third floor, use a "manlift," or a freight elevator or hoist. The stairway lead-

ing from the first to the second floor was located inside the building immediately west of the south entrance and the freight hoist and manhoist were immediately to the west of the stairway. The freight hoist had a platform without sides and was approximately 5 feet square. This platform was raised and lowered by means of a ⅜ inch wire cable which wound around a drum attached to and operated by an electric motor. In raising the platform of the hoist, the cable wound around the drum as the drum revolved. When the drum turned in the other direction, the cable unwound and lowered the platform. The hoist was operated by means of two ropes which extended from the first floor to the switch on the motor. By pulling the "up rope," the switch made contact, causing the cable to wind onto the drum. Conversely, by pulling the "down rope," the switch made contact, causing the cable to unwind. Around the square opening where the platform rested on the first floor was a fence, with gates constructed of pipe, and on one of the gates was a sign reading "Freight only. No Passengers Allowed."

The "manlift," which was situated immediately west of the hoist, had a sign upon it reading "Employees Only." The lift consisted of an endless belt extending vertically from the first to the fourth floor. The belt rolled counterclockwise around two rollers, one being fastened at the first floor and the other at the fourth. At spaced intervals on this belt were small platforms upon which to stand and "hand-holds" which the rider could grasp while riding the lift.

Upon entering the building, plaintiff first placed a box containing seven pies on the manlift, carrying three others on his left arm. He stepped on the platform on which the pies were placed and prepared to ascend. However, someone on an upper floor started the manlift in motion, the pies were spilled on the floor and plaintiff returned to his truck for more pies. Upon reentering the building, he placed his merchandise upon the elevator, intending to use it as he had done on previous occasions. Plaintiff testified that a Mr. Hants, an employee of defendant, was at the time working near the elevator and manlift and when he asked Mr. Hants if it were all right to use the elevator, Hants replied "Sure. Go ahead." Plaintiff then started the elevator by pulling on the "up rope" and when the hoist had reached the third floor level, it stopped, the wire cable parted and the platform dropped to the first floor with plaintiff, resulting in serious injuries to him.

Plaintiff testified that previous to the accident he had ridden

on the freight hoist on two different occasions and that before using it, he had used the manlift two or three times in "going up." He further testified that on his first visit to the premises, he met a man on the stairs, dressed in blue denim clothing, who showed him the location and manner of operation of the manlift and freight hoist. Defendant's first contention is that the court erred in admitting this testimony and aruges that plaintiff failed to sustain the burden of proof that the man on the stairs was an employee of defendant corporation and acting within the scope of his employment. ██ Under the circumstances shown by the record, the jury was entitled to infer that the man on the stairs was an employee of defendant and where one is performing work and labor for another, prima facie evidence of employment is shown and such person is presumed to be a servant in the absence of evidence to the contrary. (*Robinson* v. *George,* 16 Cal.2d 238, 242 [105 P.2d 914].) While it is true that there was no proof that the man on the stairs had authority to bind the defendant by his acts and conduct, the plaintiff does not contend that liability on the part of defendant was created thereby. His contention is that the defendant corporation was liable for the negligent acts of its agents and employees in the construction, maintenance and operation of the elevator. (*Pfingst* v. *Mayer,* 93 Cal.App.2d 265, 272 [208 P.2d 1002].) That the elevator was dangerous, defective and negligently maintained and operated is well established by the evidence. Furthermore, the questioned evidence was admitted by the court for a limited purpose and the jury was instructed that the conversation with the man on the stairs was admitted not for the purpose of showing negligence on the part of the defendant corporation but only for the purpose of showing "how the plaintiff got there" and also with respect to any inference which the jury might or might not draw as to the use of the hoist or elevator.

██ It is next contended that the court erred in admitting in evidence the statement of Mr. Hants, an employee of defendant, made to plaintiff as he was about to use the elevator immediately prior to the accident. At that time plaintiff asked Mr. Hants if he could use the elevator and Hants replied "Sure. Go ahead." Objection was made to this testimony on the same grounds as urged in defendant's first contention and the court stated that the conversation with Hants was admitted for the limited purpose previously stated and that the instructions given by Hants did not show that they were pursuant to any authority of the defendant. In this connec-

tion, the jury was instructed that the defendant was not liable for the act of any person in granting permission to ride the freight hoist unless it was shown that the act of giving permission, if permission were given, was within the scope of such person's agency or employment. Under the circumstances shown, no prejudicial error was committed in the admission of either of the conversations in question.

Defendant argues that the court erred in giving as instructions to the jury certain orders of the Division of Industrial Safety and instructing the jury that the violation of any of such orders constituted negligence *per se*. The orders referred to were orders, rules and regulations issued in conformity with the provisions of sections 6312 and 6500 of the Labor Code. These orders and regulations provide generally for the installation and maintenance of proper bumpers, guardrails, hoist way gates, final limit stopping devices, slack cable devices, the proper rope cables, correct and counterweight safety devices, sheaves and safety factors to be used in the construction and operation of elevators. In this connection, the court also instructed the jury as to the provisions of sections 7300 and 7304 of the Labor Code relative to the inspection of elevators and the issuance of permits for the operation thereof.

Evidence was introduced to show that the elevator in question was not equipped and operated as required by these rules and regulations. Defendant's objections to these instructions are that the benefit of the safety orders and Labor Code provisions is restricted to a situation where an employer-employee relationship exists; that in the instant case the plaintiff is not entitled to the benefits of the safety provisions because at the time of the accident he was an employee of the Bowie Pie Company and not an employee of defendant. We conclude that the safety orders and the provisions of the Labor Code referred to were intended not only to protect employees of defendant corporation but also as safeguards for the public generally against injury or loss of life and that it was proper to instruct the jury as to such rules and regulations and provisions in the instant case. (*McKeon* v. *Lissner*, 193 Cal. 297, 303 [223 P. 965] ; *Bateman* v. *Doughnut Corp. of America*, 63 Cal.App.2d 711, 715 [147 P.2d 404].)

Finally, defendant contends that plaintiff was a trespasser and argues that since there was no wilful or wanton misconduct on the part of the defendant, he is not entitled to recover.

Defendant concedes that plaintiff was an invitee when he entered the premises for the purpose of delivering his mer-

chandise to the third floor cafeteria but argues that he became a trespasser when he left the stairs and went to the elevator. The point is not well taken. Admittedly, the plaintiff entered defendant's premises on the day of the accident as a business invitee with merchandise to be delivered to the company's cafeteria therein. The building housed an elevator to carry freight to the upper floors. The elevator had been previously pointed out to the plaintiff with instructions as to its use. Plaintiff's invitation extended to those portions of the premises where under the circumstances and conditions of his invitation he would naturally be likely to go. (*Gastine* v. *Ewing,* 65 Cal.App.2d 131, 141 [150 P.2d 266] ; *Stewart* v. *Lido Cafe,* 13 Cal.App.2d 46, 50 [56 P.2d 553].) ■ When the plaintiff went to a portion of the premises for the common interest or mutual advantage of himself and the owner of the premises, he remained an invitee. (*Buckingham* v. *San Joaquin Cotton Oil Co.,* 128 Cal.App. 94, 98 [16 P.2d 807].) ■ The question as to whether the invitation, express or implied, included that part of the premises where the injury occurred was one of fact for the determination of the jury. (*Gastine* v. *Ewing, supra,* 131; *Biondini* v. *Amship Corp.,* 81 Cal.App.2d 751 [185 P.2d 94].) The jury was fully instructed on the question as to whether plaintiff was an invitee or trespasser and determined this question of fact in favor of the plaintiff. A freight elevator, as defined in the instructions of the court and by the Division of Industrial Safety is as follows: ''3004-6 Freight Elevator—A freight elevator is one used solely for carrying freight and such persons as are necessary for the handling of freight and the operation of the elevator.'' ■ Whether the elevator was a passenger or a freight elevator, or both, was a question of fact addressed to the jury. ■ It cannot be said as a matter of law that plaintiff was guilty of contributory negligence in disregarding the sign on the elevator cage. This was likewise a question for the jury. (*Jenson* v. *Will & Finck Co.,* 150 Cal. 398, 411, 412 [89 P. 113].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied November 26, 1951, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1952.