[Civ. No. 27607.    Second Dist., Div. Two.    July 7, 1964.]

CHARLES S. GAW, Plaintiff and Appellant, v. EDMUND P. McKANNA, Defendant and Respondent.

Jones & Tollefson and Philip F. Jones for Plaintiff and Appellant.

John F. McKenna, Jr., for Defendant and Respondent.

FOX, P. J.—Plaintiff brought this action for damages for personal injuries allegedly arising from a trip-and-fall incident which occurred on defendant's property. He appeals from a judgment entered on a verdict for defendant following a trial by jury.

At the time of his injury plaintiff was employed by Pacific Inspections, Inc., a company which was in the business of making inspections and reports on properties for which insurance had been sought. His duties consisted of personally inspecting such properties as were assigned to him for this purpose, and making a written report to his employer for transmittal to the insurance company that had requested it. This report was then used by the insurance company in deciding whether a policy of insurance would be issued or renewed.

On May 31, 1960, plaintiff was instructed by his employer to inspect and report on the real property and improvements located at 440 North Alvarado Street in Los Angeles. This property was owned by defendant, a licensed real estate broker, having been acquired by him about a year previously for investment and income purposes. The improvements on the property consisted of: an unoccupied store building which fronted on the street; an asphalt driveway from the street to the rear of the store building; an asphalt walkway extending from the driveway along the rear of the store building; and an old vacant house located a few feet to the rear of the store building on the back part of the lot. On an adjoining lot, also owned by defendant, was another dwelling which defendant rented out and which was occupied continuously from the time he purchased it. At the time he purchased the property defendant made an arrangement with these tenants to keep the property clean and free of foreign matter in return for an allowance on their rent.

On the day plaintiff arrived to inspect the property, the store building and grounds were concededly in a state of disrepair. Glass panes were broken in the store building and there was trash and debris inside. Plaintiff walked down the driveway to the rear of the house, where he noticed some clumps of grass and some trash strewn about in the back yard. At the end of the driveway he turned to walk along the asphalt walkway that went across the rear of the store. After taking only two or three steps, however, his left foot tripped over a tree stump which was growing up through the asphalt walk and which, according to plaintiff's testimony, was con-

cealed by a clump of grass so that he didn't see it. The ensuing fall resulted in the injuries of which plaintiff here complains.

The asphalt walk upon which the injury occurred had been installed before defendant had purchased the property. He had inspected the property prior to the purchase and was personally present on the property every 10 days to two weeks, during which occasions he noticed that the property was unclean and unkempt. He knew there were clumps of grass at the rear of the building but was unaware of the existence of the tree stump.

Prior to trial it was stipulated (by virtue of defendant's failure to respond to plaintiff's request for admissions) that on the date in question plaintiff came on defendant's property and on the asphalt walkway as a business invitee of defendant's, for the purpose of inspecting the property and to make a report to the insurance company to which defendant had applied for public liability insurance.

At the conclusion of the trial the jury was instructed generally on the law of negligence, the duties of a landowner to a business invitee, contributory negligence, and assumption of the risk. Certain instructions requested by plaintiff, however, were refused, and this refusal forms the basis for plaintiff's principal claim of error on this appeal.

Plaintiff contends, among other things, that the following special instruction should have been given to the jury: "Title 8, section 3250 (b) of the California Administrative Code, in the sub-chapter entitled 'General Industry Safety Orders,' provides as follows:

"Permanent roadways, walkways and material storage areas in yards shall be maintained reasonably free of dangerous depressions, obstructions and debris.

"If you should find from the evidence in this case that the defendant conducted himself in violation of the safety order just read to you, you are instructed that such conduct constituted negligence as a matter of law."

This instruction embodies the terms of General Industry Safety Order section 3250(b), which plaintiff asserts is applicable in the instant case. Essentially, plaintiff's position is that defendant, as a property owner, here occupied the status of an "employer" under the definition set forth in the Labor Code, and that as such he had the duty of complying with all applicable general safety orders of the Division of Industrial Safety. We have concluded, for the reasons set

forth below, that the case authority in this state supports plaintiff's contention. Therefore, since the failure to give the requested instruction necessitates a reversal of the judgment, we shall confine our discussion to that particular point.

According to Labor Code section 6304 the term "employer" includes "every person having direction, management, control, or custody of any . . . place of employment. . . ." "Place of employment" means any place where employment is carried on. (Lab. Code, § 6302.) The cases construing these sections make clear that their meaning is not to be restricted by the traditional concept of an employer as one who hires another to work for him. ▌ Rather, "This definition is obviously intended to enlarge the meaning of 'employer' beyond its usual meaning for the purposes of division 5 of the Labor Code in which it is found and which deals specifically with 'Safety in Employment.' Where an owner of real property contracts to have work done on his property such property becomes a place 'where employment is carried on' and hence a place of employment under the definition of section 6302. Since the owner has 'custody and control' of his own property, he then has custody and control of a 'place of employment' and hence is an 'employer' with the definition of section 6304. This was the specific holding of the court in *Maia* v. *Security Lumber & Concrete Co.,* 160 Cal.App.2d 16 [324 P.2d 657]. . . .

"We are satisfied that as to unsafe conditions of employment which exist in the place of employment at the time that it is turned over by the owner to an independent contractor the owner is an 'employer' within the meaning of Labor Code, section 6304. This being so the owner's duties as 'employer' under 6304 were obviously greater than his common-law duties as invitor to an invitee. As 'employer' under that section he was obliged under section 6400, Labor Code, to furnish a place of employment which was 'safe for the employees therein.' This is a statutory duty which cannot be satisfied by mere warning or obviousness, those questions going only to the question of the injured party's contributory negligence. (*Atherley* v. *MacDonald, Young & Nelson, supra,* 142 Cal.App.2d p. 587 [298 P.2d 700].)" (*Johnson* v. *A. Schilling & Co.,* 170 Cal.App.2d 318, 322, 324 [339 P.2d 139]. See also *Williams* v. *Pacific Gas & Elec. Co.,* 181 Cal.App.2d 691, 708 [5 Cal.Rptr. 585]; *Johnson* v. *A. Schilling & Co.,* 194 Cal.App.2d 123, 128-131 [14 Cal.Rptr. 684].) Thus, the owner of property as an "employer" must comply with ap-

plicable safety orders even though a business invitee who is injured is actually the employee of someone else, if the owner at the time has control and custody of the property.

The cases in which the problem has most often arisen have been where the property owner has contracted with a third party to have some construction or other improvement performed on his land. Defendant, in an understandable attempt to escape from this somewhat unusual interpretation of the term ''employer,'' argues that the extension of this principle should be restricted to situations where such construction or improvement is sought by the landowner. Even if we were to assume, however, that an insurance inspection resulting from defendant's application for insurance differs from some physical improvement or repair in terms of benefit to the property owner, we could not accept the limitation based on this distinction. ■ ''It is not essential to applicability of a safety order that any benefit be conferred by the injured worker or his employer on the party violating the order.'' (*Di Muro* v. *Masterson Trusafe Steel Scaffold Co.*, 193 Cal. App.2d 784, 791 [14 Cal.Rptr. 551].)

It has been held that a property owner is an ''employer'' within the meaning of the Labor Code, so as to owe a higher duty of care than he would to a business invitee, when the injured person was making a delivery of pies on defendant's property (*Pierson* v. *Holly Sugar Corp.*, 107 Cal.App.2d 298 [237 P.2d 28]) ; where the injured person was unloading his truck at defendant's loading dock (*Nungaray* v. *Pleasant Valley etc. Assn.*, 142 Cal.App.2d 653 [300 P.2d 285]) ; and where the injured person was helping to unload logs from his truck in defendant's lumber yard (*Lokey* v. *Pine Mountain Lumber Co.*, 205 Cal.App.2d 522 [23 Cal.Rptr. 293].) It has even been stated by our Supreme Court that the property owner will be considered an ''employer'' regardless of whether the injured business invitee was engaged in a course of employment at the time of the injury, and presumably, therefore, regardless of whether the injured person was employed by anyone. (*Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846 [313 P.2d 854].) In *Porter* the plaintiff entered defendant's store as a customer and hence was a business invitee. She fell on a stairway inside the store which lacked a center handrail, in violation of a safety order of the Division of Industrial Safety. After discussing some of the cases we have cited above, the court stated at page 849: ''Defendant attempts to distinguish the foregoing cases from

the present one on the ground that the plaintiffs there, although not employed by the defendants, were employees of third parties and were acting in the course of such employment. However, the fact that the persons injured were employed by someone is not made the basis of any of those decisions, and, to the contrary, the *Pierson* and *Nungaray* cases rest expressly on the conclusion that the plaintiffs were protected as members of the general public. Moreover, a distinction between a person who enters a department store at the direction of his employer and one who comes there for the same purpose on his own initiative would be unreasonable and productive of anomalous results. Such a distinction would mean, for example, that the stairway safety order would apply to a secretary entering defendant's store on a shopping errand for her employer but that it would not protect her if she went there during her lunch hour to make a purchase for herself, even though the store's relationship to her would be identical in both instances.

"Some safety orders, such as those regulating machinery, might be regarded as peculiarly designed to protect employees when applied to places of employment which the public is prohibited from entering. An entirely different situation, however, is presented where, as here, a person is a business invitee in a department store and is using a stairway which the store provides for persons in her position as well as for the employees."

We believe that the facts of the instant case fall within the principle enunciated in *Porter*. The safety order embodied in the requested instruction is not "peculiarly designed to protect employees." The walkway on the property was open to use by any business invitee, and as such the safety order applied to protect such persons in general.

Defendant's reliance on *Kuntz* v. *Del E. Webb Construction Co.*, 57 Cal.2d 100 [8 Cal.Rptr. 527, 368 P.2d 127], and similar cases is misplaced. The factual picture in those cases is readily distinguishable from the instant case, and in fact the distinction has been clearly pointed out before. In *Johnson* v. *A. Shilling & Co.*, *supra*, 170 Cal.App.2d 318, the court stated at page 323: "Cases such as *Deorosan* v. *Haslett Warehouse Co.*, 165 Cal.App.2d 599 [332 P.2d 422], and *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716] [which is followed in the *Kuntz* case, *supra*], are distinguishable on their facts. In those cases the danger-

ous condition was created by the injured employee's immediate employer during the course of the work, a condition over which the owner in the one case and the general contractor in the other did not have 'direction, management, control, or custody' within the meaning of section 6304, Labor Code. (*Deorosan* v. *Haslett Warehouse Co.*, *supra*, 165 Cal.App.2d pp. 599, 617-618.) It was because of this distinction that the court in *Atherley* v. *MacDonald, Young & Nelson*, 142 Cal. App.2d 575 [298 P.2d 700], stressed the fact that the owner in that case was also in fact the builder, with the contractor acting as its agent, since the dangerous condition in *Atherley* was created by the contractor in the course of construction, in a matter over which the owner *as owner* would not have had 'direction, management, control, or custody.'

"To make the owner responsible as 'employer' under section 6304 as construed by the cases the dangerous condition must exist in the place of employment when it is turned over to the contractor."

Defendant in the instant case, is not, as he in effect asserts, "an owner of premises who does nothing more with respect to the work of an independent contractor than exercise general supervision and control to bring about its satisfactory completion . . ." as was the defendant in *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407, 413 [20 Cal.Rptr. 12, 369 P.2d 708]. Defendant here in fact had custody and control of the defective asphalt sidewalk that plaintiff used in the performance of his duties and to which the safety order applied. His attempted analogy, therefore, to cases involving safety orders which specifically direct methods of work in particular instances, and over which an owner of land obviously has no control, is simply not sound.

From the foregoing, we conclude that it was prejudicial error to refuse the instruction requested by plaintiff, for the jury was thereby limited to deciding defendant's liability solely on his obligation as an invitor to a business invitee, rather than the higher standard of care applicable to him as an "employer" under the Labor Code.

The judgment is reversed.

Herndon, J., and Roth, J., concurred.