THOMPSON (Raymond), J. pro tem.*
Plaintiffs, owners of a restaurant on Highway 18 at Rim Forest, San Bernardino County, brought this action against defendants for alleged negligence in the use of a welding torch in cutting a hole in a steel plate in plaintiffs’ building, causing the building to catch fire and be severely damaged. The complaint by the plaintiffs, David A. Pekus and Neva E. Pekus, husband and wife, hereinafter referred to as “Pekus,” alleges negligence on the part of defendants, Lake Arrowhead Boat Company, a corporation, and Edi Juan, an individual, hereinafter referred to severally and collectively as “Arrowhead Boat *862 Co., ’ ’ in performing work of cutting' a ■ metal plate with a gas-fired cutting torch which started a fire that damaged their property. Defendants answered, denying the allegations of the complaint and alleging the affirmative defenses of contributory negligence and assumption of risk. The pretrial conference order incorporates separate pretrial statements of the parties which state the issues to be negligence and contributory negligence, thus apparently eliminating the assumption of risk defense.
The action came on regularly for trial before a jury. Defendants requested instructions on contributory negligence, which were refused by the trial judge. The issue on appeal is whether there was evidentiary support for the affirmative defense of contributory negligence, and if so, was the refusal of the trial court to so instruct the jury on this issue prejudicial error.
The facts were that plaintiffs Pekus owned and operated the Mountain Kitchen Restaurant for 15 years. During their occupancy they installed a steel plate covering the entire kitchen wall area around an exhaust fan vent. Plaintiff Neva Pekus testified she thought asbestos sheeting was installed behind the steel plating. Plaintiffs and their employee Smith removed an existing 10-inch fan from the kitchen wall and testified that the exhaust fan hole was encased in a metal box. Employee Smith did work for plaintiffs from time to time and was specifically employed for the purpose of removing the 10-inch exhaust fan and installing a 12-inch fan as required by the Health Department. Smith participated in the removal of the old fan and testified that he spent practically a half-day cleaning grease from behind the location of the fan which had been removed. The substance of his testimony in this regard, was, “Well, I tried to remove all the grease. I went back in the hole there and cleaned it out. To the best of my recollection there was a square box, a metal box which was larger than the hole because we could put the new fan in without changing the box. It was metal. I cleaned some grease out of there by reaching inside and cleaning it out with a detergent and steel wool and just about everything to clean grease with. There was grease there, naturally, I mean, it was a cooking range. I probably spent two or three hours cleaning out in back of the hood. How much grease, I can’t answer. ’ ’
Plaintiffs and Smith endeavored to enlarge the hole in order to be able to install the larger fan by the use of punches and a hacksaw, but were unable to cut the steel plate, and there *863 fore decided to have it cut by a welder. Defendant, besides being in the boat business, does general contracting, has welding equipment and does some custom welding work. On being called by plaintiffs, defendants sent a young man, Charles Grove, with the cutting torch and equipment. When he arrived, there was some conversation between him and Mr. Smith concerning the job. According to Grove’s testimony, the requested cut was marked on the steel plate. He was told what was desired in the way of enlarging the hole and to cut along the marked lines. He testified that he asked Smith what was behind the wall, and that Smith said he wasn't sure, but he was pretty sure it would be all right to go ahead and cut it. Shortly after the cutting was completed, the building was on fire. Employee Smith, although not a welder, testified that he had had considerable experience supervising welding operations in connection with pipeline construction.
Fire Chief Neweombe of the Crest Forest Fire District, who responded to the fire alarm and directed the extinguishment of the fire, investigated the cause and traced the cause of the fire to the wall on which the cutting operation was performed. He testified that he found no evidence of a fire box in the wall. He made no mention of finding any asbestos in the area.
The parties stipulated that the building loss was in the sum of $19,845.78, and that there was a business interruption loss of $1,848.00, and $633 personal property loss, and plaintiff Neva Pekus testified to a further loss of $1,477.60 for restaurant equipment. The jury, however, brought in a verdict for only $15,000, indicating the possibility of a compromise, even though contributory negligence was not an issue submitted to them.
Apparently the torch cut right through the steel into the wood, which inferentially was saturated with an accumulation of 15 years’ cooking grease. From the chief’s testimony, there was also no indication of the presence of asbestos behind the steel.
Perhaps the leading case in recent years on the question of the circumstances requiring the giving of instructions on contributory negligence is Phillips v. G. L. Truman Excavation Co., 55 Cal.2d 801 [13 Cal.Rptr. 401, 362 P.2d 33], That was a case in which the facts which would justify a finding of contributory negligence would seem to be weaker than in the ease at bench. The significant language of the decision, written by Mr. Justice Peters, page 80.6, is as follows: “The key question on this appeal is whether there was any substan *864 tial evidence on the issue of plaintiff’s contributory negligence. If there was evidentiary support for this defense, it was error of a most serious nature to have refused to give the proffered instructions. It is hornbook law that each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence. It is incumbent upon the trial court to instruct on all vital issues involved. (See Sills v. Los Angeles Transit Lines, 40 Cal.2d 630, 633 [255 P.2d 795] and cases cited; Daniels v. City & County of San Francisco, 40 Cal.2d 614, 623 [255 P.2d 785]; Rideau v. Los Angeles Transit Lines, 124 Cal.App.2d 466, 469 [268 P.2d 772].) Contributory negligence is a basic defense in a personal injury action (Buckley v. Chadwick, 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242]; Courtell v. McEachen, 51 Cal.2d 448 [334 P.2d 870]). A trial court, where there is evidence to support such a defense, may not, by refusing to instruct on it, deprive a party of this defense. If it does, the error in refusing to instruct on it is obviously prejudicial in any ease where the evidence admitted in support of the defense, if believed, would support a verdict in favor of the complaining party. (Clement v. State Reclamation Board, 35 Cal.2d 628, 643 [226 P.2d 897]; Kelley v. City & County of San Francisco, 58 Cal.App.2d 872, 876 [137 P.2d 719]; Hoffman v. Southern Pacific Co., 84 Cal.App. 337, 344 [258 P. 397].)
i£ Where the evidence on the issue of contributory negligence is conflicting, and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of the facts (Kirk v. Los Angeles Ry. Corp., 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1]; Hudson v. Rainville, 47 Cal.2d 474 [297 P.2d 434]; Atherley v. MacDonald, Young & Nelson, Inc., 142 Cal.App.2d 575 [298 P.2d 700]; Lockhart v. Rini, 171 Cal.App.2d 293 [340 P.2d 344]).
“Thus, the basic question presented in this case is whether or not there was evidentiary support for the defense of contributory negligence. If there was such support, it was prejudicial error not to have given the proffered instructions.
“While the evidence as to the negligence of defendants may appear to some of us to be strong, and the evidence as to the contributory negligence of the plaintiff to be slight', there is some evidence of a substantial character to support such a defense. That being so, the defendants were entitled to instructions on this issue, and the refusal to give such instructions was prejudicial error. ’ ’
*865 The plaintiffs in their brief seem to attach significance to the fact that the conduct of defendants’ employee Grove was negligence as a matter of law, in that it was in violation of California Health and Safety Code, section 13001, and also was in violation, apparently, of San Bernardino County Ordinance No. 767. This, however, is not significant in that it is rather routine to instruct on contributory negligence in cases where defendants’ negligence is such as a matter of law by reason of their conduct being in violation of some statute, safety order or ordinance. Assuming that defendants were guilty of negligence as a matter of law, it is well established that contributory negligence is still a valid defense. Martin v. Stone, 187 Cal.App.2d 726, 730 [10 Cal.Rptr. 184], is one of a number of cases so holding.
Plaintiffs, further, seem to take the position that they are divorced completely from the torch-cutting activity by reason of the same being under the exclusive control and management and comprising the exclusive activity of defendants. In this connection, it is asserted that defendants’ activity was the sole proximate cause of the occurrence. However, plaintiffs, and particularly their employees, Smith, stood by while the cutting was in progress and told the welder where to cut. Then Smith affirmatively indicated that he thought it was safe to cut at that particular location. There is no argument whatever but that the welder was negligent. However, we believe that for the plaintiffs’ agent, Smith, to stand by and allow, encourage and make suggestions in reference to the use of the welding torch was a course of conduct that should have been passed upon by the jury for their determination as to whether there was contributory negligence. Smith had worked in the area for several hours, endeavoring to clean out the grease. It is not difficult to imagine the condition of the inner structure of the building, in view of 15 years of grease-laden air being pumped into, through and around the said structures. Although it is true that one has a right to rely upon another doing his duty and not disobeying the law, yet he may not stand idly by and be blind to what is apparent to him or which should be apparent to him as a person of ordinary prudence. If nothing else, the jury should have been enabled to evaluate the effect of Smith’s affirmative action in advising Grove that he thought it was safe to cut at the points indicated.
We have not been cited to nor have we found any authority holding that where a party has employed another to perform *866 some act requiring that other person’s special skill and training that in the carrying out of that activity by that person, necessarily and in every situation, the party employing the expert cannot be guilty of contributory negligence. It is true that one employing an expert may reasonably rely upon the supposed superior knowledge of the expert. But such reliance must have some limitation. Thus, even in the relation of physician and patient, it has been held that a patient may be guilty of contributory negligence which would bar recovery in a malpractice action against the physician. Los Alamos Medical Center v. Coe, 58 N.M. 686 [275 P.2d 175, 50 A.L.R.2d 1033], held that an instruction on contributory negligence was properly given in a case where the physician was being sued for causing the patient to become addicted to drugs, although in face of a favorable finding to plaintiff on the issue of contributory negligence by the jury, the court refused to find contributory negligence as a matter of law. See also the annotation to the cited case and cases cited in the opinion.
To what extent a party may rely upon the superior knowledge of an expert must depend on all the circumstances including the relative knowledge of the parties. Obviously, a patient properly could and should place a great deal of confidence in the superior knowledge of a physician with 12 or 15 years of training in his field. The welding trade requires some training and skill. Yet the amount of reliance that plaintiffs’ employee, Smith, who himself had supervised welding operations, should properly have placed on defendants’ employee, Grover, should have been submitted to the jury in connection with the issue of contributory negligence.
It is a well established rule of law that while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of tile trial court, substantially the reverse is true when the party appeals from a judgment in a case in which jury instructions have been refused. In determining whether or not a refused instruction should have been given, an appellant is entitled to have the evidence viewed in the light most favorable to him. (Costa v. A. S. Upson Co., 215 Cal.App.2d 185, 187 [30 Cal.Rptr. 66].)
Judgment reversed.
McCabe, P. J., and Kerrigan, J., concurred.

AssignecL by the Chairman of the Judicial Council.